UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JOSEPH A. GELLING,

                                    Petitioner,

        v.                                                                9:20-CV-1418
                                                                          (LEK/ML)

MRS. TITUS, Superintendent

                                    Respondent.

_____

APPEARANCES:                                    OF COUNSEL:

JOSEPH A. GELLING
Petitioner, pro se
12-B-1943
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

HON. LETITIA JAMES                              JAMES F. GIBBONS, ESQ.
Attorney for Respondent                         Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

MIROSLAV LOVRIC
United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

### I.    INTRODUCTION

        Petitioner Joseph A. Gelling ("Petitioner") seeks federal habeas corpus relief

pursuant to 28 U.S.C. § 2254.  Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Memorandum

of Law in Support of Petition for a Writ of Habeas Corpus; Dkt. Nos. 1-2–5, Exhibits.  On

November 18, 2020, this action was administratively closed due to Petitioner's failure to

properly commence it.  Dkt. No. 2, Order Directing Administrative Closure.  Petitioner

was advised if he desired to pursue this action he must so notify the Court and, within

thirty days of the Order, either (1) pay the filing fee of five dollars, or (2) submit a

completed, signed, and properly certified in forma pauperis ("IFP") application.  *Id.* at 2.

Petitioner subsequently paid the filing fee and the case was reopened.  Dkt. Entry dated

11/23/2020 (identifying receipt information for the filing fee transaction); Dkt. No. 3, Text

Order (restoring action to the Court's active docket).

Respondent successfully requested two extensions of time to file a response.

Dkt. Nos. 6 & 9, Letter Motions (requesting an extension of time); Dkt. Nos. 7 & 10, Text

Order (granting requests).  Respondent submitted a response.  Dkt. No. 12, Response;

Dkt. No. 12-1, Memorandum of Law in Opposition to Petition; Dkt. Nos. 12-2–16,

Transcripts; Dkt. Nos. 12-17–19, State Court Records.  Petitioner successfully

requested an extension of time to file a reply.  Dkt. No. 15, Letter Motion (requesting an

extension); Dkt. No. 16, Response to Letter Motion (consenting to request); Dkt. No. 17,

Text Order (granting request).[1]  Petitioner subsequently filed a reply.  Dkt. No. 20,

Traverse.

## II.    RELEVANT BACKGROUND

### A.  Pre-Trial Proceedings

#### 1.  Appearances October 3, 2011

On October 3, 2011, Petitioner, represented by Mr. Jeffrey Domachowski, Esq.,

appeared in Onondaga County Supreme Court (hereinafter, "County Court" or "trial

---

[1] Petitioner also requested a copy of Respondent's amended petition, but said request was denied as no amended petition had been filed.  Dkt. No. 18, Letter Motion (requesting copies); Dkt. No. 19, Text Order (denying request).

court").  Dkt. No. 12-2 at 1-8.  The County Court first acknowledged that, in addition to a previously filed indictment charging Petitioner with a weapons offense, an indictment vote certificate had been issued, the subject of which was the incident which led to Petitioner's burglary arrest.  *Id.* at 2.  Mr. Domachowski informed the County Court that Petitioner had prepared a pro se motion to dismiss the indictment containing the burglary charge, but County Court explained such a motion would not be proper as that indictment had not yet been filed.  *Id.* at 2-3.  County Court advised Petitioner he could move to dismiss the indictment following his arraignment.  *Id.* at 2-6.

### 2.  Indictment

In an Indictment filed October 19, 2011,[2] a Grand Jury charged Petitioner with: Burglary in the First Degree, in violation of N.Y. PENAL LAW ("P.L.") § 140.30(1); Criminal Use of a Firearm in the First Degree, in violation of P.L. § 265.09(I)(a); Burglary in the Second Degree, in violation of P.L. § 140.25(2); Criminal Possession of a Weapon in the Second Degree, in violation of P.L. § 265.03(3); Criminal Mischief in the Fourth Degree, in violation of P.L. § 145.00(1); Petit Larceny, in violation of P.L. § 155.25; and Criminal Possession of Stolen Property in the Fifth Degree, in violation of P.L. § 165.40.  Dkt. No. 12-17 at 95-96.  Petitioner was arraigned on the seven counts contained in this indictment on October 25, 2011.  Dkt. No. 12-1 at 4.

### 3.  Change of Counsel, November 1, 2011

Petitioner, accompanied by Mr. Domachowski, appeared before County Court on November 1, 2011.  Dkt. No. 12-4 at 1-6.  The County Court first confirmed Petitioner was the subject of two indictments– one for Criminal Possession of a Weapon in the

---

[2] *See* Dkt. No. 12-17 at 95-97, Indictment No. 2011-1038-1.

Third Degree and a "second indictment that ha[d] a lead charge of [B]urglary . . . [in the F]irst [D]egree" –then asked "if there[ wa]s a proposal on that case." *Id.* at 2. The Assistant District Attorney ("A.D.A.") explained there was a proposal for "20 years [imprisonment] with the C[riminal] P[ossession of a] W[eapon in the T]hird [degree sentence] to run concurrent to that 20 years." *Id.*

The County Court next acknowledged Petitioner's request for a change of counsel. Dkt. No. 12-4 at 3-6. It announced Petitioner "ha[d]n't established the grounds for change of counsel but, unlike" another case Judge Brunetti presided over, Petitioner's "case was just starting and since . . . [Petitioner was] facing . . . [in light of] the burglary first and the weapons second [charges] . . . 40 years" the court would be willing to assign Petitioner a new lawyer. *Id.* at 3. Petitioner was asked if he had "any suggestions or requests" for a different attorney, and Petitioner stated he "need[ed] a defense lawyer, somebody who's good with defenses" then suggested "[Ms.] Platenik[.]" *Id.* at 3-4. County Court agreed to assign Ms. Platenik despite Mr. Domachowski's statement that he was unaware of Petitioner's request. *Id.* at 4. The Judge responded that "there[ was] no good cause" in Petitioner's letter request, but there were "six or seven months before [Petitioner's] trial so why should he go away[,] if he gets convicted[,] for 20 or 30 or 40 years unhappy because [Onondaga County Supreme Court] forced some lawyer on him." *Id.* at 5.

### 4.  Appearances, November 4, and 30, 2011

On November 4, 2011, Ms. Platenik entered her appearance on behalf of Petitioner. Dkt. No. 12-4 at 7-9. The pre-trial Motions deadline was set for November 25. *Id.* at 8.

Petitioner again appeared in court on November 30, 2011, because there was concern about Ms. Platenik's representation of Petitioner.  Dkt. No. 12-4 at 10-14. County Court explained any delay caused by the law office would be comparable to a delay caused by Petitioner seeking new representation; therefore, it asked Petitioner whether he wished to proceed with Ms. Platenik's representation.  *Id.*  After the County Court confirmed the motion deadlines had been adjourned, Petitioner indicated he wished to proceed with Ms. Platenik's assistance.  *Id.* at 12.

### 5.  Appearance, December 19, 2011

Petitioner returned to Onondaga County Supreme Court, accompanied by Ms. Platenik, on December 19, 2011.  Dkt. No. 12-5 at 1-10.  The court announced, "I think what we decided to do was to make the [B]urglary case the lead case and put [the indictment containing the Criminal Possession of a] Weapon[ in the] Third [degree charge] on the back burner[,]" and defense counsel agreed.  *Id.* at 2.

County Court next acknowledged receipt of Petitioner's pro se motion to dismiss pursuant to N.Y. CRIMINAL PROCEDURE LAW ("C.P.L.") § 190.50.  Dkt. No. 12-5 at 2-8. Ms. Platenik stated Petitioner advised her he had made it known during his October 3, 2011, appearance that he wished to testify before the Grand Jury in connection with the then-pending Burglary charge and the A.D.A. argued his office had never received written notice of Petitioner's intent to testify.  *Id.* at 8.  The motion was ultimately denied with leave to renew.  *Id.*

### 6.  Appearance, February 3, 2012

Petitioner appeared next before County Court on February 3, 2012.  Dkt. No. 12-6 at 1-11.  The court first scheduled an evidentiary hearing for February 9, 2012, then

returned to Petitioner's C.P.L. § 190.50 motion.  *Id.* at 2.  Petitioner argued he had

informed Mr. Domachowski of his desire to testify before the Grand Jury and his motion

to dismiss the indictment containing the Burglary charge was not premature, but County

Court explained to Petitioner that he was not entitled to relief under § 190.50 and could

not have dismissed an indictment which had not yet been filed.  *Id.* at 7-8.  The court

reiterated its decision to deny Petitioner's motion to dismiss, explaining Petitioner

neither served the District Attorney with a written request to testify nor verbally

requested permission to testify in court.  *Id.* at 10.

### 7.  Appearance, March 3, 2012

Petitioner, represented by Ms. Platenik, and the People reappeared before

Onondaga County Supreme Court on March 3, 2012.  Dkt. No. 12-7 at 19-28.  The

parties first discussed video footage depicting the police interview of Petitioner following

his arrest.  *Id.* at 20-25.  Petitioner's attorney then argued the Burglary in the First

Degree charge was not legally sufficient.  *Id.* at 25-26.  The County Court indicated it

would make a legal ruling and plea discussions would follow, scheduling the parties'

next appearance for March 15.  *Id.* at 26-27.

### 8.  Hearing, March 15, 2012

The parties returned to Onondaga County Supreme Court on March 15, 2012,[3]

whereupon the court explained the proffered testimony from one individual would be

sufficient to establish the People's case, even without Petitioner's statements, at trial;

therefore, County Court "want[ed] to try to facilitate some settlement discussions here."

---

[3] *See generally*, Dkt. No. 12-7 at 1-18.

Dkt. No. 12-7 at 3.  The attorneys debated the sufficiency of *Miranda* warnings given to Petitioner prior to a video recorded interrogation.  *Id.* at 3-6.

Petitioner began to argue that at the time *Miranda* warnings were given, he would not have wanted to make a statement, as demonstrated by the fact that he was combative and argumentative.  Dkt. No. 12-7 at 6.  County Court stopped Petitioner, explaining the aforementioned individual's testimony would be sufficient to support a conviction regardless of the admissibility of Petitioner's statement, then told Petitioner:

> [T]he District Attorney's office[,] in anticipation of today's hearing[,] was going to propose a lower number as far as settlement. And [the court], even independently of that, was going to propose a lower number. . .
> If you enter the plea prior to the civilian witness testifying, I will promise you a sentence of twelve years determinate.
> You have a prior violent felony conviction. The mandatory minimum is ten years for this offense . . .
> You know that the maximum exposure on the [class] B felony is twenty-five years . . .
> Ms. Platenik [stated] . . . she might be able to . . . [obtain] a conviction for [the] lesser offense of burglary [in the] second [degree] at trial . . .
> If that occurred, since [Petitioner] ha[s] a prior violent felony, [his] minimum term would have to be seven years, and [Petitioner] could get as m[any] as fifteen years . . .
> [T]his twelve-year term . . . is three years lower than what [Petitioner] could get on a burglary second [conviction], even if Ms. Platenik was able to succeed in beating the burglary [in the] first degree [charge].

*Id.* at 7-8.  The court added Petitioner would have until March 26 to contemplate the offer.  *Id.* at 9.

Next, Petitioner's attorney argued the Grand Jury proceedings were defective because the People failed to introduce the video depicting the police interview of Petitioner following his arrest.  Dkt. No. 12-7 at 12-17.  Onondaga County Supreme Court rejected counsel's argument, explaining that even if counsel was correct that the

video should have been introduced, the prosecutor's failure to do so was harmless because the evidence before the Grand Jury was sufficient to support a Burglary in the First Degree charge regardless. *Id.* at 15-17.

### 9. Calendar, March 26, 2012

The parties returned to court on March 26, 2012. Dkt. No. 12-8 at 1-12. Onondaga County Supreme Court announced it would lay out the terms of a plea bargain, if Petitioner so wished, then asked Petitioner if he wished to proceed, to which Petitioner answered, "I would." *Id.* at 2. Petitioner proceeded to ask about various potential evidence gathered by the People and attempted to make the argument that some of the evidence was exculpatory; however, the court explained Petitioner was incorrect and proceeded to settlement discussions. *Id.* at 2-7.

The court announced, if Petitioner entered a plea of guilty, he would retain the ability to appeal its ruling on the suppression of Petitioner's statement to police, but abandon other issues. Dkt. No. 12-8 at 8. The court then declared:

> [W]ith an overall plea to burglary [in the] first degree and criminal possession of a weapon in the second degree, in the main indictment, and a plea to the nonviolent [class] D felony in the other indictment, [Petitioner] could receive a net sentence of twelve years determinate plus five years post release [supervision] with a concurrent sentence in the other case with surcharges to be paid at a later date.

*Id.* at 8-9. Judge Brunetti explained the offer would not remain available to Petitioner after that day and asked Petitioner for his thoughts. *Id.* at 9. Petitioner stated, "I'm sorry, Your Honor. I can't take twelve years . . . I can't rightfully admit that I did this because I have no memory of it at all." *Id.*

County Court then explained to Petitioner that he could accept an *Alford* plea, under which he could plead guilty, despite his lack of memory, if "now, while sober, [Petitioner was] convinced of the strength of the case." Dkt. No. 12-8 at 9-10. The A.D.A. noted "the [c]ourt's proposal of twelve years is [offered] over the People's objection." *Id.* at 10. Petitioner responded "[m]y thing is, like, there [are] a lot of unanswered questions for me. You know what I'm saying?" *Id.* Petitioner further explained "[a]s far as the video, the fingerprints . . . but, then, the statement that my co-defendant made contradicting the statement she made at the Grand Jury, it's a lot of issues[.]" *Id.* at 10-11. The court told Petitioner "you have a right to plead not guilty and go to trial . . . if that's how you've evaluated the case and you've evaluated what you think is the strength or nonstrength of the case or the viability of a defensive theory, then I respect that." *Id.* Petitioner asked whether he would "be able to do a recall tomorrow or a day after and speak with [his] attorney" and the court agreed to allow Petitioner to return two days later with his decision. *Id.* at 11.

### 10. Appearance, March 28, 2012

The March 28, 2012, proceedings began with Onondaga County Supreme Court's declaration that "if we can't resolve [Petitioner's case] today, then the plea negotiations will be terminated[.]" Dkt. No. 12-8 at 13-24. Ms. Platenik stated:

> I've gone over the offer with my client extensively . . . I went over the case with him . . . I advised him that, under the circumstances, that I thought it might be in his best interests to take the offer. I told him that he faces up to 25 years if he is convicted and the offer is 12 years.
> And based on that, and with the evidence and the information that the D.A.'s office has given to me to this date, and I reviewed everything [and] . . . given my client copies of everything . . . I did show him the videotape of his interrogation . . .

9

> I was there yesterday also going over everything with
> [Petitioner], and he's advised that he doesn't want to accept
> the offer.

*Id.* at 14-15.  Accordingly, the court announced the case would proceed to a suppression hearing.  *Id.* at 15.

Petitioner's attorney also re-raised the issue of grand jury defectiveness, arguing an intoxication defense instruction should have been given prior to a Grand Jury vote. Dkt. No. 12-8 at 15-17.  The trial court repeated its ruling that the evidence presented to the Grand Jury was sufficient to support the charges contained in the indictment.  *Id.* at 17, 20.  Petitioner argued the Grand Jury should have been presented the video of his co-defendant's statement, but the court explained inconsistences in the co-defendant's statement were a matter for trial.  *Id.* at 22-23.

### 11. Sandoval and Other Pre-trial Matters Hearing, April 3, 2012

Petitioner reappeared before Onondaga County Court on April 3, 2012, for a *Sandoval* hearing and to discuss other pre-trial matters.  Dkt. No. 12-8 at 25-45.[4]  The court ultimately ruled the People would be permitted to ask Petitioner whether he had been convicted of a felony but could only discuss specific offenses if Petitioner indicated he had not.  *Id.* at 32-33.  Additionally, defense counsel raised issues concerning the Bill of Particulars and Petitioner raised the issue of identification.  *Id.* at 37-44.

### B.  Jury Trial

---

[4] *See generally*, *People v. Sandoval*, 34 N.Y.2d 371 (1974) (explaining the New York procedure under which a trial court determines whether evidence of prior convictions is admissible in the event a criminal defendant testifies).

10

Petitioner's jury trial on the charges contained in the October 19, 2011, Indictment commenced on April 23, 2012.  Dkt. No. 12-9 at 1.  On April 26, 2012, the jury began deliberations.  Dkt. No. 12-12 at 172.

Deliberations continued the following morning until the trial court explained it had received a note from the jurors asking "[w]hat happens when we cannot come to [a] consensus on the First and Second Counts?[.]"  Dkt. No. 12-13 at 20.  The jurors entered the courtroom and the foreperson confirmed the jury had reached a unanimous agreement as to all counts except for Counts One and Two, for Burglary in the First and Second Degree, respectively.  *Id.* at 21-24.  The jury found Petitioner guilty of: Count Three, Criminal Possession of a Weapon in the Second Degree; Count Four, Criminal Mischief in the Fourth Degree; Count Five, Petit Larceny; and Count Six, Criminal Possession of Stolen Property in the Fifth Degree.  *Id.* at 24-26.

Next, the trial court read the jury a supplemental instruction on reaching a consensus.  Dkt. No. 12-13 at 26-30.  Deliberations resumed thereafter and continued the following Monday.  Dkt. No. 12-13 at 30-40; Dkt. No. 12-14 at 3-4.  The jury sent a note reading "[i]f we cannot come to a consensus on the First Count, can we consider and come to a verdict on the second count[?]."  Dkt. No. 12-14 at 4.  The court instructed the jury to proceed with deliberations, considering Count One first.  *Id.* at 6-8.

The jury resumed deliberations until the jurors sent another note stating "[t]here is one element in the First Count that we've deliberated since Thursday and cannot come to a consensus."  Dkt. No. 12-14 at 9.  The A.D.A. responded the People would be willing to allow the jury to consider Count Two without reaching a verdict on Count

One.  *Id.*  The jury subsequently found Petitioner guilty of Count Two, Burglary in the Second Degree.  *Id.* at 12-13.

### C. Post-Trial Hearings

#### 1. Hearing, May 21, 2012

On May 21, 2012, Ms. Platenik appeared before Onondaga County Supreme Court on Petitioner's behalf.  Dkt. No. 12-4 at 15-17.  The court raised the issue of a remaining, then-pending, Criminal Possession of a Weapon in the Third Degree charge against Petitioner, contained in an indictment separate from the indictment containing the charges Petitioner had been convicted on during the April 2012, jury trial.  *Id.* at 16. The court explained that if Petitioner entered a plea of guilty to the remaining charge, "[Petitioner] would receive a concurrent sentence with whatever is imposed on the burglary [in the second degree conviction obtained at trial and if Petitioner] . . . w[o]n a reversal on the [convictions from the jury trial] . . . he would have the right to withdraw his plea[.]"  *Id.*  Defense counsel agreed to discuss Petitioner's options with him.  *Id.* at 17.

#### 2. Post-Trial Motions and Plea Hearing, June 4, 2012

On June 4, 2012, the parties returned to Onondaga County Supreme Court for a motion and plea hearing.  Dkt. No. 12-15 at 1-20.  The court first acknowledged receipt of a letter from Petitioner, requesting various transcripts, and explained that the Appellate Division would issue an order to obtain said transcripts for Petitioner's direct appeal.  *Id.* at 2-3.  Next, the A.D.A. served defense counsel with a copy of Petitioner's second felony offender statement.  *Id.* at 3.

The court asked Petitioner whether he wished to admit or deny the People's claim that Petitioner had been convicted of Attempted Robbery in the Second Degree, a violent felony, on August 6, 2003; Petitioner had a discussion with his attorney; and Petitioner admitted the prior conviction. Dkt. No. 12-15 at 5. The court then turned to Petitioner's pending Criminal Possession of a Weapon in the Third Degree charge and defense counsel stated Petitioner wished to proceed with entry of a plea. *Id.* at 7. Petitioner asked whether the court would take a guilty plea on the remaining charge into consideration when fashioning a sentence for the convictions obtained at trial and Supreme Court confirmed it would not "hold this against [Petitioner.]" *Id.* at 8-9. Petitioner also declared he had not been furnished a copy of the accusatory instrument or ballistics report for the pending charge, but defense counsel stated she possessed a copy of the indictment and the A.D.A. agreed to make a copy of the operability report available to Petitioner at sentencing. *Id.* at 9-11. Accordingly, Petitioner entered a plea of guilty to Criminal Possession of a Weapon in the Third Degree. *Id.* at 11.

The parties next discussed defense counsel's filing of a motion to set aside the jury's verdict pursuant to C.P.L. § 330. Dkt. No. 12-15 at 11-17. Ms. Platenik argued the jury's verdict of guilty to Criminal Possession of a Weapon in the Second Degree was inconsistent with the jury's inability to reach a verdict on the Burglary in the First Degree charge. *Id.* at 13-15. The motion was denied. *Id.* at 15. Petitioner interjected with additional arguments, but Judge Brunetti explained the jury's inability to find Petitioner guilty on one count beyond a reasonable doubt was "not some kind of an implied finding as to something else." *Id.* at 15-17.

Finally, Petitioner directed the court's attention to the March 26, 2012, hearing during which Petitioner declined to accept the twelve year plea offer "due to [sic] [defense counsel's] belief that [the defense] could get the top charge [of Burglary in the First Degree] thrown out." Dkt. No. 12-15 at 17. Petitioner argued:

> [The court] said if [the defense] got the top charge thrown out that [Petitioner] could still get up to fifteen years for the Burglary [in the] Second [degree charge, if convicted]. You never mentioned anything with it being able to run the weapons charge consecutive to the gun which may have allowed me to accept my guilt and then take twelve years. Whereas now . . . [Petitioner] potentially face[d] thirty years, instead of just the fifteen.

*Id.* at 17-18. The court asked Petitioner: "[a]re you saying neither [this court], nor your lawyer privately . . . ever mentioned the possibility that you could receive a consecutive sentence on the [Criminal Possession of a] Weapon[ in the] Second Degree [charge, if convicted]? Is that what you're saying?" and Petitioner answered "[n]ever." *Id.* at 18.

The A.D.A. asserted Petitioner's apparent argument– that he was willing to risk a *twenty-five year sentence* if convicted of Burglary in the First Degree at the time he rejected the plea offer promising a twelve year sentence, but was *not* willing to risk any more by proceeding to trial –was unpersuasive. Dkt. No. 12-15 at 18-19. Petitioner responded that he and Ms. Platenik "believed that we could [] beat[] the top count" and did, in fact, do so at trial, explaining:

> If I didn't believe that we would have been able to . . . then I would [have] took them twelve years. I was never advised by nobody [sic] whatsoever that this charge could be run consecutive to anything. I thought it was all to be ran concurrent as it was under one indictment . . . all knowledge that I received was that it was to be concurrent, including from you on the 26th of March, Your Honor.

*Id.* at 19. The court announced it would consult hearing transcripts and instructed the parties to return the following week. *Id.* at 19.

### 3. Hearing, June 13, 2012

Petitioner, represented by Ms. Platenik, and the prosecutor appeared before Onondaga County Supreme Court on June 13, 2012. Dkt. No. 12-4 at 18-31. Defense counsel argued the Criminal Possession of a Weapon in the Second Degree conviction from Petitioner's trial should be set aside. *Id.* at 21-26. Specifically, counsel argued that, for the jury to have found Petitioner guilty of Burglary in the First Degree, the jury "would have [had] to have found that [Petitioner] entered a dwelling unlawfully with intent to commit a crime therein and was in possession of a firearm . . . [in the dwelling] and/or [in] immediate flight therefrom[,]" but Petitioner was acquitted of Burglary in the First Degree, and it did not make sense for the jury to find Petitioner guilty of "criminal possession of a weapon [in the] second [degree] without . . . [also finding Petitioner guilty of] the burglary" in the First Degree charge. *Id.* at 22-24.[5] The court was unpersuaded by counsel's argument. *Id.* at 26.

Next, the A.D.A. confirmed Petitioner had admitted his prior felony status. Dkt. No. 12-4 at 26-27. Petitioner returned to the Criminal Possession of a Weapon conviction, arguing he did not understand "how I could possibly possess a weapon that is loaded and operable and not be armed with a weapon . . . if I was armed with it, then I would have to [had] be[en] found guilty of the burglary in the first degree" charge. *Id.* at

---

[5] *See also* P.L. § 140.30(1) ("A person is guilty of burglary in the first degree when he knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom . . . [i]s armed with . . . a deadly weapon[.]"); P.L. § 265.03 ("A person is guilty of criminal possession of a weapon in the second degree when: . . . such person possesses any loaded firearm.").

28.  Supreme Court explained to Petitioner that "[t]he jury never found [Petitioner] unanimously not guilty of burglary in the first degree[,]" the People merely "consent[ed] for the[ jurors] to stop deliberating" on that count.  *Id.* at 29.  Finally, the court explained Petitioner would receive copies of requested transcripts as part of his direct appeal and scheduled sentencing for June 19, 2012.  *Id.* at 30.

    **D.  Sentencing**

On June 19, 2012, Petitioner appeared before Onondaga County Supreme Court for Sentencing.  Dkt. No. 12-16 at 1-16.  The People asked the court to impose sentences of fifteen and seven years for the Burglary and Criminal Possession of a Weapon convictions, respectively.  *Id.* at 6-10.  Ms. Platenik next spoke on Petitioner's behalf, asking the court to consider the fact that Petitioner's mind was affected by an intoxicant at the time of the crimes when fashioning a sentence.  *Id.* at 10-12.  Finally, Petitioner addressed the court, stating he could not "recall any of the incidents from that night . . . but [could] still feel and understand [the victim's] pain and [was] sorry for what [she] went through."  *Id.* at 12-14.

For the conviction of Burglary in the Second Degree, Onondaga County Supreme Court sentenced Petitioner as a second violent felony offender to a fifteen year determinate term and five years' post-release supervision.  Dkt. No. 12-16 at 15.  For his conviction of Criminal Possession of a Weapon in the Second Degree, Petitioner was sentenced to a seven year determinate term and five years' post-release supervision, to run consecutively to the sentence imposed for Burglary.  *Id.*  Petitioner was also sentenced to three one year terms for his convictions of Criminal Mischief in the Fourth Degree, Petit Larceny, and Criminal Possession of Stolen Property in the

16

Fifth Degree, to run concurrently with the sentences imposed for the felony convictions. *Id.* at 3, 15.  Additionally, pursuant to the agreement concerning Indictment No. 2011-0906, Petitioner received a sentence of two to four years, to run concurrently with the sentences imposed for the convictions on the charges contained in Indictment No. 2011-1038-1.  *Id.* at 2.

### E.  Direct Appeal

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department.  *See* Dkt. No. 12-17 at 4-6, Notice of Appeal; 7-403, Petitioner's Counseled Appellate Division Brief and Appendix; 404-77, Petitioner's Supplemental Pro Se Appellate Division Brief and Appendix.  Petitioner argued, *inter alia*, he was deprived of the effective assistance of counsel because trial counsel gave Petitioner erroneous advice about his maximum sentencing exposure– thus depriving him of the ability to make a knowing and intelligent decision as to whether to enter a plea of guilty –and failed to present a cogent intoxication defense.  *See id.* at 27-43.[6]  The People opposed Petitioner's appeal.  *See id.* at 478-518, The People's Appellate Division Brief; 519-29, The People's Response to Petitioner's *Pro Se* Supplemental Brief.

On July 25, 2018, the Appellate Division, Fourth Department affirmed Petitioner's judgment of conviction.  *See People v. Gelling*, 163 A.D.3d 1489 (4th Dep't 2018).[7]  The Fourth Department concluded Petitioner was not denied the effective assistance of counsel, concluding trial counsel did not provide ineffective assistance by failing to call an expert witness to testify about the potency of the alcoholic beverage Petitioner

---

[6] Petitioner offered additional arguments in support of his ineffective assistance of trial counsel claim in his pro se supplemental brief.  *See* Dkt. No. 12-17 at 442-48.
[7] A copy of the Fourth Department's Memorandum and Order is also included in the State Court Records. *See* Dkt. No. 12-17 at 531-36.

consumed or by failing to establish the meaning of Petitioner's blood alcohol content as indicated on a booking form. *Id.* at 1489-90. With respect to Petitioner's claim that trial counsel provided ineffective assistance regarding the plea offer, the Fourth Department held said claim "'involve[d] strategic discussions between [Petitioner] and his attorney outside the record on appeal, and it must therefore be raised by way of a motion pursuant to CPL 440.10[.]'" *Id.* at 1490 (citations omitted). The Fourth Department also rejected Petitioner's other claims. *Id.* at 1490-93.

Petitioner subsequently filed a Motion for Reconsideration/Reargument of the Fourth Department's Decision pursuant to 22 New York Codes, Rules, and Regulations ("N.Y.C.R.R.") 1000.13(p). *See* Dkt. No. 12-17 at 537-563–Dkt. No. 12-18 at 1-39, Petitioner's Motion for Reconsideration or Reargument and Exhibits.[8] Petitioner also applied to the Court of Appeals for leave to appeal the Fourth Department's decision affirming Petitioner's judgment of conviction, pursuant to C.P.L. § 460.20. Dkt. No. 12-18 at 40-48, Petitioner's Application for Leave. On September 28, 2018, the Court of Appeals denied Petitioner's application for leave. *People v. Gelling*, 32 N.Y.3d 1003 (2018).[9]

### F. Post-Judgment Motions

On October 21, 2015, Petitioner filed a Motion in Onondaga County Supreme Court to vacate his judgment of conviction pursuant to C.P.L. § 440.10 ("First 440 Motion"). *See* Dkt. No. 12-18 at 51-206, Petitioner's Motion to Vacate Pursuant to

---

[8] On September 18, 2018, the Fourth Department granted Petitioner's Motion, in part, amending the Memorandum and Order to remove "the phrase 'second-story[.]'" *People v. Gelling*, 164 A.D.3d 1673 (4th Dep't 2018); *see also* Dkt. No. 12-17 at 50; *Gelling*, 163 A.D.3d at 1492 ("[T]he evidence established [Petitioner] . . . made several attempts to enter the dwelling at issue by cutting screens and attempting to force open a door, eventually entered through a second-story window . . . ").

[9] A Copy of the Court of Appeal's Opinion denying leave to appeal further is also included in the State Court Records. *See* Dkt. No. 12-18 at 49.

C.P.L. § 440.10 and Exhibits.  Petitioner argued, *inter alia*, "[Mr.] Domachowski and

[Ms.] Platenik['s r]epresentation [of Petitioner] fell below an objective standard of

reasonableness, and caused egregious and prejudicial errors so that [Petitioner] did not

receive a fair trial."  *Id.* at 59; *see also*, *id.* at 60-108.  Concerning counsel's allegedly

ineffective advice regarding sentencing exposure, Petitioner averred his:

> [M]aximum sentence exposure, if convicted, following trial
> was underestimated substantially. Counsel told [Petitioner]
> his maximum exposure was 25 years . . . [Petitioner] was
> willing to accept the 12 years offered, had he been properly
> advised of consecutive exposure . . . Had it been known there
> was a potential 40 year sentence looming over [Petitioner's]
> head, he would have accepted the Court[']s 12 year proposal.

*Id.* at 69-70.  The People opposed Petitioner's Motion.  *Id.* at 207-86, the People's

Answering Affirmation and Exhibits; *see also id.* at 287-319, Petitioner's Reply Affidavit

and Exhibits.

On January 6, 2017, Onondaga County Supreme Court denied Petitioner's First

440 Motion as procedurally barred.  *See* Dkt. No. 12-18 at 350-365, Supreme Court's

Decision Denying Petitioner's Motion to Vacate.  The court explained Petitioner's

ineffective assistance claims involved matters of record and, "[i]n any event . . . under

the 'totality of the circumstances' [Petitioner] received meaningful representation."  *Id.* at

353 (citing *People v. Baldi*, 54 N.Y.2d 137 (1981)) (emphasis omitted).  With respect to

Petitioner's argument concerning counsel's advice regarding sentencing exposure, the

court found Petitioner's "claim [wa]s procedurally barred and belied by the record"

noting "even if counsel did not advise [Petitioner] of his sentencing exposure,

[Petitioner] was advised of his sentencing exposure by this court."  *Id.* at 354-55.

Petitioner applied to the Appellate Division, Fourth Department for a certificate granting leave to appeal Onondaga County Supreme Court's denial of his First 440 Motion, pursuant to C.P.L. § 460.15.  *See* Dkt. No. 12-18 at 538, Fourth Department's Letter Acknowledging Petitioner's Application; *see also* Dkt. No. 12-18 at 539, the People's Answering Affirmation in Opposition to Petitioner's Motion for Leave; 540-66, Petitioner's Reply Affidavit and Exhibits.  On April 11, 2017, the Fourth Department denied Petitioner's application.  Dkt. No. 12-18 at 569-70, Fourth Department's Decision Denying Petitioner's C.P.L. § 460.15 Application for Leave to Appeal.

Petitioner also filed a second collateral challenge in Onondaga County Supreme Court to set aside his sentence pursuant to § 440.20 ("Second 440 Motion"), dated September 2, 2016.  *See* Dkt. No. 12-18 at 320-49, Petitioner's Motion to Set Aside Sentence Pursuant to CPL § 440.20 and Exhibits.  Petitioner contended, *inter alia*,

> The erroneous advice provided by both the Supreme Court J[udge] and counsel alike negatively influenced [Petitioner]'s decision making. Had [Petitioner] been rightfully made aware of the possible imposition of consecutive sentences[,] he would have accepted the [plea] offer . . . if he was aware of the potential 30 year exposure [even] after gaining an acquittal upon the [Burglary in the First Degree] charge[, Petitioner] would not have proceeded to trial. [Petitioner] was ultimately sentenced to 22 years . . . which denies [Petitioner']s Due Process Rights and imposes upon his [l]iberty.

*Id.* at 339.  The People opposed Petitioner's Second 440 Motion.  *Id.* at 463-537, the People's Answering Affirmation and Exhibits; *see also id.* at 567-68, Petitioner's Reply.

On September 6, 2017, the Onondaga County Supreme Court denied Petitioner's Second 440 Motion.  Dkt. No. 12-18 at 571-580, Supreme Court's Decision Denying Petitioner's C.P.L. §§ 440.10 and 440.20 Motions.  The court observed

Petitioner's "claim that he was erroneously advised concerning sentencing exposure[] was previously raised in his first *pro se* CPL §440.10 motion and denied as procedurally barred and without merit." *Id.* at 578.

Petitioner applied to the Appellate Division, Fourth Department for a certificate granting leave to appeal Onondaga County Supreme Court's denial of Petitioner's First and Second 440 Motions, pursuant to C.P.L. § 460.15. Dkt. No. 12-18 at 581-848, Petitioner's Motion for Leave to Appeal and Exhibits; 849, Fourth Department's Letter Acknowledging Petitioner's Application; *see also* Dkt. No. 12-18 at 850, 853-928–Dkt. No. 12-19 at 1-36, the People's Answering Affirmation in Opposition to Petitioner's Motion for Leave to Appeal and Exhibits. On November 29, 2017, the Fourth Department denied Petitioner's application. Dkt. No. 12-18 at 851, Fourth Department's Decision Denying Petitioner's C.P.L. § 460.15 Application for Leave to Appeal.

On July 23, 2019, following the Court of Appeals' denial of Petitioner's application to continue his direct appeal, Petitioner filed another Motion to vacate his conviction in Onondaga County Supreme Court ("Third 440 Motion"). *See* Dkt. No. 12-18 at 853-928–Dkt. No. 12-19 at 1-36, Petitioner's Motion to Vacate and Exhibits; Dkt. No. 12-19 at 37-44, Supplemental Materials; *see also* Dkt. No. 12-19 at 24-50, the People's Letter Response in Opposition to Petitioner's Motion; 51-59, Petitioner's Reply. On January 6, 2020, the court denied Petitioner's Third 440 Motion. Dkt. No. 12-19 at 60-79, Onondaga County Supreme Court's Decision and Order Denying Petitioner's Motion to Vacate. The court first observed Petitioner raised "very similar arguments" in his two prior motions which had been "denied as procedurally defaulted and meritless[;]" therefore, Petitioner's "motion [wa]s procedurally barred." *Id.* at 66. The court further

observed Petitioner's "self-serving claims [we]re made solely by him . . . contradicted by court records and, given the circumstances of this case, there [wa]s no reasonable possibility his claims [we]re true." *Id.* (citations omitted).

Petitioner applied to the Fourth Department for leave to appeal Onondaga County Supreme Court's 2020 denial of his motion to vacate pursuant to C.P.L. § 460.15. *See* Dkt. No. 12-19 at 80-233, Petitioner's Motion for Leave to Appeal and Exhibits; *see also* Dkt. No. 12-19 at 234-35, Fourth Department Correspondence; 236, the People's Answering Affirmation in Opposition to Petitioner's Application for Leave to Appeal; 237-239, Petitioner's Reply. On August 21, 2020, the Fourth Department denied Petitioner's application for a certificate granting leave. Dkt. No. 12-19 at 240-42.

## III.  PETITION

Petitioner challenges his 2012 judgment of conviction for Burglary in the Second Degree; Criminal Possession of a Weapon in the Second Degree; Criminal Mischief in the Fourth Degree; Petit Larceny; and Criminal Possession of Stolen Property in the Fifth Degree in Onondaga County Supreme Court following jury trial. *See generally*, Pet.; Dkt. No. 1-1. Petitioner argues he is entitled to federal habeas relief because he was denied the effective assistance of trial counsel when trial "counsel failed to provide accurate sentencing exposure advice that prejudiced [Petitioner] by subjecting him to stand trial unnecessarily." Dkt. No. 1-1 at 7; *see also* Pet. at 5. Respondent contends "[t]he petition fails to state a claim upon which relief may be granted" because "the state court rejected [Petitioner's ineffective assistance of counsel] claim on the merits and that determination did not unreasonably apply clearly established Supreme Court law[.]" Dkt. No. 12 at 3.

22

## IV.    DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (internal quotation marks and citation omitted).

To establish that counsel was constitutionally ineffective, a convicted defendant must demonstrate (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In order to prove counsel's performance was deficient, "a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'"  *Harrington v. Richter*, 562 U.S. 86, 104 (2010) (quoting *Strickland*, 466 U.S. at 688).  Under the second prong, "[t]o establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Strickland*, 466 U.S. at 694. An ineffective assistance of counsel claim must be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (explaining courts may consider either prong of the test first and need not address both if the defendant fails on one).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105. When evaluating an ineffective assistance claim on habeas review, "the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect[,] but whether that determination was unreasonable— a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro*, 550 U.S. at 473) (internal quotations omitted). Therefore, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

In denying Petitioner's Third 440 Motion, Onondaga County Supreme Court reasoned:

> [Petitioner's] self-serving claims are made solely by him[; ] contradicted by court records[;] and, given the circumstances of this case, there is no reasonable possibility his claims are true . . .
> [Petitioner's] motion appears to be based on counsel's statement during the March 28, 2012[,] appearance that she "told [Petitioner] he faces up to 25 years if he is convicted and the offer is 12 years" . . . [Trial] counsel was correct that [Petitioner] faced 25 years if convicted of first degree burglary, but her on-the-record statement did not mention or take into account the possibility of a consecutive sentence of up to 15 years for the weapons charge, for a total possible sentencing

exposure of 40 years . . . Assuming counsel did not tell [Petitioner] about that possibility in her private discussions with [him], counsel's advice was incomplete.

But [Petitioner] must . . . show that the advice affected the outcome - i.e., had counsel told [Petitioner] he faced 40 years in prison, he would have pleaded guilty . . .

First, th[is] court advised [Petitioner] on November 1[], 2011[,] that his sentencing exposure was 40 years if convicted as charged . . . Second, the record is clear [Petitioner] rejected the 12-year offer for reasons that had nothing to do with the maximum possible sentence he faced.

Dkt. No. 12-19 at 66-67 (citations omitted). Petitioner has failed to demonstrate the state court's application of *Strickland* was unreasonable.

### A. The State Court's Conclusion that Petitioner's Claim was Contradicted by the Records was not Unreasonable.

"To establish prejudice resulting from deficient representation in the guilty plea context, petitioners must 'show the outcome of the plea process would have been different with competent advice.'" *Smalls v. Kaplan*, No. 9:17-CV-0393 (TJM), 2018 WL 11473769, at *9 (N.D.N.Y. Jan. 2, 2018) (quoting *Lafler*, 566 U.S. at 163) (additional citations omitted). Therefore, Petitioner was required to show a reasonable probability that, but for counsel's deficient advice, he would have accepted Onondaga County Supreme Court's plea offer. *Lafler*, 566 U.S. at 168; *see also Missouri v. Frye*, 566 U.S. 134, 147 (2012) ("To show prejudice . . . where a plea offer has . . . been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.").

In his post-conviction motions, Petitioner argued he was not aware the sentence imposed for a conviction on the Criminal Possession of a Weapon charge could run consecutively to any sentence imposed for a conviction on either Burglary charge, and

he rejected Onondaga County Supreme Court's plea offer because he believed his maximum sentencing exposure if convicted on all of the charges contained in the October 19, 2011, indictment was twenty-five years. *See* Dkt. No. 12-18 at 69-70, Petitioner's First 440 Motion (arguing "[c]ounsel told [Petitioner] his maximum [sentencing] exposure was 25 years" however, Petitioner "actually faced up to 40 years [if convicted of] Burglary 1st [and Criminal Possession of a Weapon in the Second Degree], and 30 years [if convicted of] Burglary 2nd [and Criminal Possession of a Weapon in the Second Degree]" and had Petitioner "known there was a potential 40 year sentence looming over head, he would have accepted the Court['s] 12 year proposal."); Dkt. No. 12-18 at 337-39, Petitioner's Second 440 Motion ("[c]ounsel advised [Petitioner] in the event of an acquittal upon the Burglary 1st [charge,] he would be subject to no worse than 15 years [imprisonment] for the remaining counts[,]" but, "[h]ad [Petitioner] been rightfully made aware of the possible imposition of consecutive sentences[,] he would have accepted the offer proposed[.]"); Dkt. No. 12-18 at 859-60, Petitioner's Third 440 Motion ("[b]ecause the sentence on either burglary charge could be run consecutively with the weapon possession charge, [P]etitioner actually faced up to 40 years if convicted of first-degree burglary and 30 years if convicted of second degree burglary" therefore, counsel provided ineffective assistance "by advising [Petitioner] that he faced only 'up to 25 years' if convicted after trial.").  However, Petitioner's argument– that he did not know consecutive sentences could be imposed, thus, his maximum sentencing exposure if convicted on all counts following trial was greater than twenty-five years' imprisonment –is contradicted by the record.

During Onondaga County Supreme Court's colloquy with Petitioner concerning his change of counsel request, the court cited Petitioner's significant sentencing exposure in justifying its decision to grant Petitioner's request.  *See* Dkt. No. 12-4 at 3. The court told Petitioner: "if you take the burglary first and the weapons second, that's 40 years. So if you want me to give you a new lawyer . . . I have no problem because you were just arraigned in October."  *Id.*  After Petitioner's attorney at the time stated he was not aware of Petitioner's request or any reason for Petitioner to request new representation, Onondaga County Supreme Court clarified there was "no good cause" to grant Petitioner's request, but there was enough time until any trial would commence and "why should [Petitioner] go away if he gets convicted for 20 or 30 or 40 years unhappy because [Judge Brunetti] forced some lawyer on him[?]."  *Id.* at 5.

The trial court's declarations, made in Petitioner's presence, contravene Petitioner's claimed unawareness of Onondaga County Supreme Court's authority to impose consecutive sentences for the burglary and weapons possession charges, resulting in a sentence of more than twenty-five years' imprisonment.  Because Petitioner cannot dispute the trial court's record statements, he appears to contest the effect of the court's remarks concerning the possibility of consecutive sentences because the declarations were made prior to Onondaga County Supreme Court's plea offer.  *See* Dkt. No. 1-1 at 9 ("counsel stated that [Petitioner's] maximum exposure was up to twenty five years . . . [t]his advice was given during contemplation of the plea, during negotiations, not as an aside made when petitioner requested counsel), Dkt. No. 1-1 at 12 ("though . . . the court did provide a previous estimate, that was not in the context of a plea so any consecutive suggestions were premature.").  To the extent

Petitioner contends the trial court's declarations about his sentencing exposure should not be considered because those declarations predated the offer of the plea Petitioner rejected, the undersigned is unpersuaded.

In sum, Onondaga County Supreme Court's record statements concerning Petitioner's sentencing exposure belie Petitioner's claimed unawareness of the possible imposition of consecutive sentences if convicted of the burglary and weapon possession charges at trial and analogous assertion that he would have accepted the plea offer but for counsel's advice.

Moreover, Petitioner's own statements about his decision to reject the plea offer belie his claim that, but for counsel's allegedly deficient advice, he would have accepted Onondaga County Supreme Court's plea offer. Instead, as Onondaga County Supreme Court explained, Petitioner "rejected the 12-year offer for reasons that had nothing to do with the maximum possible sentence he faced." Dkt. No. 12-19 at 67.[10]

First, Petitioner's refusal to plead guilty to offenses which he did not remember committing undermines his argument in the instant matter. After Onondaga County Supreme Court explained the terms of its plea offer to Petitioner,[11] Petitioner stated he would not accept the offer because "[he] c[ould ]n[o]t rightfully admit that [he] did this because [Petitioner] ha[d] no memory of it at all." Dkt. No. 12-8 at 9. Even after the

---

[10] In rejecting Petitioner's Third 440 Motion, the state court explained Petitioner rejected the plea offer because he:

> (1) believed, incorrectly, that he was not provided with full discovery at the time of the offer and had questions about the People's proof . . . (2) would not admit to committing a first degree burglary when he believed that charge would eventually be dismissed . . . ; and (3) could not admit to committing the crime because he could not remember doing so due to intoxication[.]

Dkt. No. 12-19 at 67-68 (citations omitted).

[11] *See generally*, Dkt. No. 12-8 at 8-9.

court offered Petitioner the opportunity to take an *Alford* plea, Petitioner declared he

would not accept the offer because "there [were] a lot of unanswered questions[.]"  *Id.* at

10.  Petitioner's aversion to making any admissions about his own conduct on– or the

strength of the People's case concerning –a morning he claimed to have no memory of

contravenes his subsequent assertion that he would have entered a guilty plea.

Relatedly, Petitioner's refusal to accept Onondaga County Supreme Court's plea

offer was demonstrably motivated by his desire to confront the People's case at trial.  In

explaining his disinclination to accepting the offer, Petitioner pointed to "unanswered

questions"– including "video" and "fingerprint[]" evidence and allegedly "contradict[ory]"

statements made by another charged prosecution witness –questions which necessarily

would not be resolved if Petitioner accepted the plea offer.  Dkt. No. 12-8 at 10-11.[12]

Petitioner's apparent ambition to contest the charges at trial undermines his assertion

that he would have accepted the trial court's plea offer.

Finally, Petitioner's claim that he would have accepted the plea offer absent

counsel's allegedly defective advice is belied by his demonstrable aversion to a

Burglary in the *First Degree* conviction.  Onondaga County Supreme Court's plea offer,

which promised a twelve year determinate sentence, would have required Petitioner to

plead guilty to Burglary in the First Degree and Criminal Possession of a Weapon in the

Second Degree.  Dkt. No. 12-8 at 8.  However, Petitioner's specific opposition to a First

---

[12] At trial, Petitioner's attorney conducted a thorough cross-examination of the witness claimed to have driven Petitioner to the dwelling he was charged with entering and observed Petitioner's possession of the weapon.  *See generally*, Dkt. No. 12-11 at 40-64.  Defense counsel also explored the subjects of the environment of Petitioner's videotaped interview and fingerprint evidence through prosecution witnesses. *See id.* at 119-25, 141-43.

Degree Burglary conviction evidently motivated his decision with respect to the plea

offer.  In explaining his decision to reject the plea offer, Petitioner states:

> [Defense counsel] was adamant about her ability [to] beat[]
> the burglary [in the] 1st [degree charge and] Petitioner[,]
> inspired by her confidence, evaluated the disparity [between
> the twelve-year sentence contained in Onondaga County
> Supreme Court's plea offer and the fifteen-year sentence the
> court could impose for a Burglary in the Second Degree
> conviction following jury trial] of 36 months and *not interested
> in an armed Burglary conviction due to his past experience
> with convictions and employment*, proceeded to trial[.]

Traverse at 5 (citations omitted, emphasis added); *see also* Traverse at 3 ("Petitioner

prompted settlement discussions seeking a Burglary 2nd degree[.]") (citations

omitted).[13]  Petitioner's aversion to a Burglary in the First Degree conviction is bolstered

by the fact that, *even if Petitioner were acquitted of the Burglary in the First Degree and*

*Criminal Possession of a Weapon in the Second Degree charges at trial*, Petitioner

faced a greater potential sentence for a Burglary in the Second Degree conviction by

rejecting the plea offer.  Because of Petitioner's prior violent felony conviction, a

sentencing court could have sentenced Petitioner to fifteen years' imprisonment if

convicted of Burglary in the Second Degree alone.  *See* P.L. §§ 140.25 ("Burglary in the

second degree is a class C felony."), 70.04(3)(b) ("[t]he term of a determinate sentence

for a second violent felony offender . . . For a class C felony . . . must not exceed fifteen

years [.]"); *see also* Dkt. No. 12-7 at 8 (Onondaga County Supreme Court explaining to

Petitioner that the "twelve-year term" contained in its plea offer was "three years lower

---

[13] Petitioner's disinclination to accept a Burglary in the First Degree conviction is further evidenced by his post-conviction motion filings.  *See, e.g.*, Dkt. No. 12-18 at 337 ("[Defense counsel] initially expressed much confidence in gaining an acquittal upon [the] Burglary [in the] 1st [degree charge] . . . [and, i]nspired by counsel's initial confidence, [Petitioner] indicated to her that he would not accept a conviction worse than Burglary [in the] 2nd [degree].").

than what [Petitioner] could get on a burglary second" conviction alone, because of Petitioner's status as a second violent felony offender).[14]  Petitioner's rejection of the twelve-year sentence plea offer– in favor of a potential fifteen-year sentence *even if counsel was successful in obtaining an acquittal on the top charge* at trial –supports the conclusion that Petitioner refused the offer because he prioritized avoiding a First Degree Burglary conviction over securing the shortest possible sentence.  In other words, Petitioner "rejected the 12-year offer for reasons that had nothing to do with the maximum possible sentence he faced."  Dkt. No. 12-19 at 67.

In sum, the record supports the conclusion that Petitioner's decision to reject Onondaga County Supreme Court's plea offer was based on Petitioner's: inability to remember the morning in question, interest in confronting the People's evidence at trial, and refusal to accept a Burglary in the First Degree conviction.  Each of these reasons for refusing the court's plea offer are completely unrelated to Petitioner's claimed misunderstanding of his maximum sentencing exposure and, therefore, belie Petitioner's assertion that he would have accepted the plea offer absent defense counsel's allegedly deficient advice.  *See e.g.*, *United States v. Frederick*, 526 F. App'x 91, 94 (2d Cir. 2013) (holding "it was not error . . . to conclude that there was no reasonable probability that additional information from [defense] counsel about the potential consequences of proceeding to trial would have changed [the defendant's] mind" in light of the defendant's "strong[] desire[] to proceed to trial" and the fact that the

---

[14] Petitioner does not contest that, at the time he rejected the plea offer, he knew he faced a potential fifteen year sentence if convicted of Burglary in the Second Degree at trial.  *See* Dkt. No. 1-1 at 10 (acknowledging "the disparity between the twelve year plea [offer] and fifteen years based on counsel's success" in securing a conviction for Burglary in the Second Degree rather than Burglary in the First Degree).

defendant "was repeatedly informed of the significant benefits of the plea offer.") (internal quotations omitted); *United States v. Delgado*, No. 96 CR. 126, 2018 WL 895615, at *5 (S.D.N.Y. Feb. 13, 2018) (finding Petitioner's claim that he would have accepted an offer but for counsel's allegedly ineffective assistance was "belied by the record" because Petitioner, *inter alia*, "stated that he . . . 'want[ed] to go to trial.'"). Accordingly, the undersigned is unable to conclude the state court's application of *Strickland* was unreasonable.

**B. Petitioner's Sentencing Disparity Argument is Unpersuasive.**

As explained above, "[t]o show prejudice from ineffective assistance of counsel where a plea offer has . . . been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147. However, "courts have been skeptical of accepting a defendant's self-serving, post-conviction statements that he would have pleaded guilty if properly advised of the consequences by his attorney." *Gluzman v. United States*, 124 F. Supp. 2d 171, 177 (S.D.N.Y. 2000) (citing *Johnson v. Duckworth*, 793 F.2d 898, 902 n. 3 (7th Cir.), *cert. denied*, 479 U.S. 937 (1986)).[15] Therefore, "[h]abeas petitioners alleging that they turned down [a] favorable plea offer[] due to the ineffective assistance of their trial counsel are routinely required . . . to present some 'objective evidence,' beyond their own postconviction testimony, to support their assertions." *Ross v. Kirkpatrick*, No.

---

[15] *See also, e.g.*, *Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003) ("in most circumstances a convicted felon's self-serving testimony is not likely to be credible."); *Williams v. Duncan*, No. 9:03-CV-0568 (LEK/RFT), 2007 WL 2177075, at *24 (N.D.N.Y. July 27, 2007) (explaining "a petitioner's 'self-serving, post-conviction' statement is insufficient to meet his burden of proving that he would have accepted the plea if [he had been] properly advised by his attorney.") (citing *United States v. Gordon*, 156 F.3d 376, 380-81 (2d Cir. 1998)) (additional citations omitted).

1:16-CV-1623, 2019 WL 12072506, at *7-8 (S.D.N.Y. Feb. 28, 2019), *report and recommendation adopted*, 2021 WL 1565580 (S.D.N.Y. Apr. 21, 2021) (concluding the state court's holding– that the petitioner "failed to demonstrate that, but for counsel's allegedly incorrect advice regarding the possibility of consecutive sentencing, . . . [the petitioner] would have accepted the . . . plea offer" –was not unreasonable) (internal quotations and citations omitted), *aff'd sub nom.*, *Ross v. Annucci*, No. 21-1281-PR, 2022 WL 16984527 (2d Cir. Nov. 17, 2022).[16]

In *Pham v. United States*, the Second Circuit held this "objective evidence" requirement may be satisfied by a "significant sentencing disparity" between the convicted defendant's actual sentence and the sentence that effective counsel would have secured.  *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (first citing *Gordon*, 156 F.3d at 381, then citing *Mask v. McGinnis*, 233 F.3d 132, 141-42 (2d Cir. 2000), *cert. denied*, 534 U.S. 943, (2001)).  Petitioner avers such a disparity supports a finding of prejudice under *Strickland* here.  *See* Dkt. No. 1-1 at 12-13 ("To establish prejudice under *Strickland* . . . '[A] significant sentencing disparity (between what is provided for under a plea agreement and the sentence imposed at trial,) in combination with defendant's intentions (that he would have plead guilty) is sufficient to support a prejudice finding.") (citing *Pham*, 317 U.S. at 182).

"However, such a disparity in outcomes does not mandate a finding of prejudice." *Meszaros v. United States*, 201 F. Supp. 3d 251, 269 (E.D.N.Y. 2016) (citations

---

[16] *See also, e.g.*, *Cochran v. Griffin*, No. 9:18-CV-0175 (LEK/TWD), 2021 WL 1223848, at *6 (N.D.N.Y. Mar. 31, 2021) ("[t]he Second Circuit has determined that a petitioner's 'self-serving post-conviction statement' that he would have pled differently had he been properly counseled is not usually enough . . . [t]here must be some other 'objective evidence,' . . . [supporting the conclusion that petitioner] would have pled differently.") (quoting *Gordon*, 156 F.3d at 381).

omitted); *see also Page v. Martuscello*, No. 1:10-CV-9699, 2011 WL 3678820, at *27 (S.D.N.Y. Aug. 23, 2011) ("The Second Circuit . . . did not create a *per se* rule that a petitioner is always prejudiced when there is a significant sentencing disparity; rather, such disparity is simply a factor for a court to consider in addressing prejudice."), *report and recommendation adopted*, 2013 WL 1092825 (S.D.N.Y. Mar. 15, 2013), *aff'd*, 561 F. Appx. 118 (2d Cir. 2014); *Mickens v. United States*, No. 9:97-CV-2122, 2005 WL 2038589, at *3 (E.D.N.Y. Aug. 17, 2005) (explaining the Second Circuit's holding in *Pham* "does not present an absolute rule.") (citations omitted), *aff'd*, 257 F. App'x 461 (2d Cir. 2007). As explained above, the record supports the state court's conclusion that Petitioner "rejected [Onondaga County Supreme Court's plea] offer for reasons that had nothing to do with the maximum possible sentence he faced." Dkt. No. 12-19 at 67. Therefore, any sentencing disparity alone would be insufficient to satisfy Strickland's prejudice prong. *See e.g.*, *Cochran*, 2021 WL 1223848, at *6 (finding "the 'great difference' between the negotiated sentence of eight to sixteen years [contained in a rejected plea offer] and actual sentence of thirty years" imposed after Petitioner's conviction at trial did not entitle Petitioner to habeas relief because "Petitioner's claim that had counsel advised him of his sentence exposure, he would not have rejected the plea [wa]s belied by the record."); *Medrano v. United States*, No. 1:06-CR-0061, 2015 WL 848551, at *20 N. 10 (S.D.N.Y. Feb. 27, 2015) (concluding that even the "'significant disparity' between the . . . sentence . . . under the plea agreement . . . and the sentence [petitioner] received . . . without an agreement" was "not dispositive of prejudice."), *report and recommendation adopted as modified*, 2015 WL 4522857 (S.D.N.Y. July 27, 2015), aff'd, 691 F. App'x 663 (2d Cir. 2017).

Moreover, cases in which petitioners have successfully relied on the disparity between their actual sentence and the sentence effective counsel could have secured under a plea agreement to establish *Strickland* prejudice are factually distinguishable from Petitioner's.  For example, "*Pham* . . . applies where an attorney *never conveyed a plea offer* or *failed to accurately advise the client on the details of a plea offer*." *Cummings v. Lee*, No. 1:09-CV-4331, 2013 WL 5744465, at *6 (E.D.N.Y. Oct. 23, 2013) (citations omitted, emphasis added) (holding *Pham* was not applicable because the "petitioner not only had notice of [the] plea offers, but was cautioned extensively by the trial judge about the high risk of proceeding to trial and was given opportunities to confer with his lawyer regarding whether to proceed to trial.").

Here, Onondaga County Supreme Court explicitly instructed Petitioner on the details of its plea offer, including the charges Petitioner would be required to enter a plea of guilty to and the sentence it would impose, and provided Petitioner additional time to discuss the strength of the government's case and contemplate the plea offer with counsel.  Therefore, Petitioner's decision to proceed to trial may not be attributed to a failure to convey the plea offer or the offer's details.  *Compare Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999) (finding counsel's representation was "plainly deficient" where defense counsel "communicated the *fact* of an offered plea bargain" but "failed to inform his client of the terms of the bargain[;] . . . [incorrectly] estimated that the Guidelines range upon a guilty plea would be approximately the same as upon conviction after trial[; and] . . . offered no advice as to whether the plea bargain should be accepted.") (emphasis in original), *with* Dkt. No. 12-8 at 8-9 (Onondaga County Supreme Court explaining the terms of its plea offer to Petitioner).

35

Furthermore, emphasis on the 120 month disparity between the sentences contained in Onondaga County Supreme Court's plea offer and sentence imposed after trial ignores the 156 month disparity between the twelve year plea offer sentence and potential twenty-five year sentence Petitioner acknowledged he faced for a conviction of Burglary in the First Degree at the time he rejected the plea offer. *See, e.g.*, Dkt. No. 12-7 at 7-8 (Onondaga County Supreme Court instructing Petitioner that "[i]f [he] enter[ed] the plea . . . [the court] will promise [Petitioner] a sentence of twelve years determinate" and "the maximum exposure on the B felony [Burglary in the First Degree charge] is twenty-five years."). Put another way, even assuming, *arguendo*, Petitioner was not aware of County Court's authority to impose consecutive sentences for the Burglary and Weapons Possession charges, Petitioner was both aware of, and accepted the risk of, a twenty-five year sentence by rejecting the plea offer and proceeding to trial, a greater sentence than the twenty-two year sentence which was actually imposed.[17]

That Petitioner was not sentenced to a greater term of incarceration than that which he knowingly accepted the risk of when rejecting Onondaga County Supreme Court's plea offer hinders a finding of prejudice under *Strickland.* A defendant cannot

---

[17] While Onondaga County Supreme Court was authorized to sentence Petitioner to fifteen years' imprisonment for both the Burglary in the Second Degree and Criminal Possession of a Weapon in the Second Degree convictions, with those sentences to run consecutively, resulting in a total term of thirty years' imprisonment after trial, "[t]he range relevant for this calculus is between 'the actual sentence and the sentence that effective counsel would have secured for the defendant.'" *Dodakian v. United States*, No. 1:14-CV-1188, 2016 WL 3866581, at *3 (S.D.N.Y. July 12, 2016) (quoting *Mask*, 233 F.3d at 141) (additional citations omitted); *see also* P.L. §§ 140.25 ("Burglary in the second degree is a class C felony."), 265.03 ("Criminal possession of a weapon in the second degree is a class C felony."), 70.04(3)(b) ("[t]he term of a determinate sentence for a second violent felony offender . . . For a class C felony . . . must not exceed fifteen years [.]"). Accordingly, for the purpose of Petitioner's sentencing disparity argument, the relevant difference is that between the twenty-two year sentence imposed by Onondaga County Supreme Court after trial and the twelve year sentence contained in the plea offer which Petitioner rejected.

secure both the benefit of proceeding to trial– the potential for a favorable verdict –and the benefit of the plea offer he rejected– a shorter sentence –in the event he was not successful.  *See*, *e.g.*, *U.S. ex rel. Williams v. McMann*, 436 F.2d 103, 107 (2d Cir. 1970).  Accepting Petitioner's claim here– that he would not have proceeded to trial had he known the court could impose a sentence of twenty-two years after trial –would be, in effect, allowing Petitioner to make "a 'heads-I-win-tails-you-lose' gamble."  *Id.*

Petitioner avers his case is similar to *Gordon*, wherein the Second Circuit agreed with the District Court's conclusion that "[t]he fact that there [wa]s a great disparity between the actual maximum sentencing exposure . . . and the sentence exposure represented by [defense counsel] provide[d] sufficient objective evidence to establish a reasonable probability that the outcome of the proceedings would differ."  *Gordon*, 156 F.3d at 381 (internal quotations omitted).  However, the petitioner in *Gordon* satisfied *Strickland*'s prejudice prong because he was sentenced "210 months' imprisonment" when defense counsel "advised Gordon that his maximum sentencing exposure upon a conviction [at trial] would be only 120 months' imprisonment[,]" which led the petitioner to reject an offered plea agreement and proceed to trial.  *Id.* at 377-78.  By contrast, here, Petitioner is unable to refute he was advised of a potential twenty-five year (300 month) sentence if convicted by the jury on the Indictment's lead charge at the time he rejected the plea offer, a sentence thirty-six months greater than the twenty-two year (264 month) sentence Onondaga County Supreme Court actually imposed after trial.[18]

---

[18] Moreover, as previously explained, Onondaga County Supreme Court's statements during the November 1, 2011, hearing conveyed Petitioner's maximum sentencing exposure.  *See* Dkt. No. 12-4 at 3-6.  Therefore, unlike in *Gordon*, Petitioner had notice of his actual maximum sentencing exposure prior to rejecting the plea offer.  Additionally, *Gordon* involved an application for relief pursuant to 28 U.S.C. § 2255, whereas the instant petition was brought pursuant to § 2254, therefore, deference to Onondaga County Supreme Court's decision is required here.  *See* 28 U.S.C. § 2254(d); *Sweet v. Bennett*, 353 F.3d

In sum, Petitioner's reliance on the disparity between the sentence imposed and the sentence contained in the plea offer he rejected is misplaced as his case is readily distinguishable from the precedent he relies on. Accordingly, the state court's conclusion, that Petitioner failed to demonstrate a reasonable probability that he would have accepted the plea offer in order to establish *Strickland* prejudice, was not unreasonable and federal habeas relief is not warranted.

## V. CONCLUSION

**WHEREFORE**, it is

**RECOMMENDED** that the petition, Dkt. No. 1, be **DENIED and DISMISSED** in its entirety; and it is further

**RECOMMENDED** that no Certificate of Appealability ("COA") shall issue because petitioner has failed to make a substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires; [19] and it is further

**RECOMMENDED** that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Report-Recommendation and Order on Petitioner, along with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

---

135, 140 (2d Cir. 2003) (explaining "[§] 2254, unlike § 2255, contains . . . a rule requiring deference to state courts[.]") (citations omitted).

[19] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).[20]

DATED: August 4, 2023

_____
Miroslav Lovric
U.S. Magistrate Judge

---

[20] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  *Id.* § 6(a)(1)(C).